UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHANES WIDJAJA, ERNIE NG, VICTOR
UTAMA AND AMPRI GUNARDI

                Plaintiffs,

    - against -

KANG YUE USA CORPORATION D/B/A/
MOCA ASIAN BISTRO, AND JOHNSON
CHEN,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
09-CV-2089 (RRM)(CLP)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

      Plaintiffs bring this putative class and collective action for monetary relief against their former employers, defendants Kang Yue USA, d/b/a Moca Asian Bistro ("Moca"), and Johnson Chen, Moca's CEO and partial owner, alleging violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law §§ 196-d and 650 *et seq.* Plaintiffs' claims arise out of defendants' alleged retention of tips and use of the "tip credit" against the minimum wage. Plaintiffs seek disgorgement of the tips retained, the tip credit, and liquidated damages. Presently before the Court are plaintiffs' and defendants' cross-motions pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment. For the reasons below, plaintiffs' motion is GRANTED IN PART and DENIED IN PART, and defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiffs were employed as servers at Moca for various periods of time between September 2008 and December 2009. (*See* Pls.' 56.1 Stmt. (Doc. No. 49-2) ¶ 4.) Specifically, Utama worked at the restaurant from September 2008 to December 2009; Widjaja worked from September 2008 to January 2009; Gunardi worked from October 2008 to November 2008; and Ng worked from September 2008 to October 2008. (Defs.' 56.1 Cntrstmt (Doc. No. 50-2) ¶ 4.) Plaintiffs were entitled to tips, thus enabling defendants potentially to take advantage of state and federal statutes that allow employers of tipped employees to pay less than the minimum hourly wage, with the tips making up the difference. This discount against the minimum wage is known as the "tip credit," and is discussed more fully below. All plaintiffs earned less than the minimum hourly wage, exclusive of tips, except Ernie Ng, who was paid above minimum wage. (Pls.' 56.1 Stmt. ¶ 5; Defs.' 56.1 Cntrstmt ¶ 17.)

Each night they worked, plaintiffs received the tips earned that day, both their cash tips and their credit card tips. (Dep. of Johnson Chen (Doc. No. 49-8) ("Chen Dep.") at 8–9, May 10, 2010.) The restaurant would give plaintiffs their credit card tips from the restaurant's own cash

---

[1] The following material facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the parties' motions for summary judgment and opposition thereto. The facts are undisputed except as noted. Moreover, unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Most paragraphs of defendants' Rule 56.1 counterstatement fail specifically to controvert the corresponding paragraphs in plaintiffs' Rule 56.1 statement. (*Compare, e.g.*, Pls.' 56.1 Stmt ¶¶ 1–6, 9–10, *with* Defs.' 56.1 Cntrstmt. ¶¶ 1–6, 9–10; *see also* Local Civ. R. 56.1(c) (providing that a statement's material facts "will be deemed to be admitted for purposes of the motion unless *specifically controverted*") (emphasis added).) Ordinarily, therefore, failure to comply with the Local Rules regarding Rule 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Rateau v. City of N.Y.*, No. 06–CV–4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed). Accordingly, plaintiffs' statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

reserves, and the restaurant would eventually be reimbursed when the credit card issuer processed the credit card transactions. (*Id.* at 9.) However, upon disbursement to plaintiffs, defendants withheld 11.5% of the credit card tips. (*Id.*) The reason for this is two-fold. First, defendants deducted 3.85% to cover the cost it incurred in converting the plaintiffs' credit card tips into cash – effectively the processing fees charged by the credit card company. (*Id.*) Second, defendants deducted 7.65% for payroll taxes. (*Id.*)[2]

It is undisputed, however, that defendants did not forward the 7.65% deductions to the Internal Revenue Service ("IRS"), except with respect to Utama, whose withholdings defendants forwarded to the IRS beginning August 2009. (Chen Dep. at 11; *see* Aff. of Victor Utama (Doc. No. 49-5) ¶ 3.) Only Utama, therefore, received a W-2 wage statement, which corresponded to the period following August 2009. (*Id.*; *see* Aff. of Ernie Ng (Doc. No. 49-4) ¶ 2; Aff. of Ampri Gunardi (Doc. No. 49-6) ¶ 2.) Defendants admit that they did not forward the monies, instead depositing them in a bank account, and note that plaintiffs did not provide defendants with their Social Security numbers. (Chen Dep. at 11.)

Utama also had to share his tips with the restaurant's sushi chef, Alex Yeh, after August 2009, at which point only Utama was still working at the restaurant. (*Id.* at 8; Pls.' Reply in Further Supp. (Doc. No. 51) at 4.) Yeh had the authority to hire and fire employees, supervise employees, set employees' schedules, and set employees' pay. (Chen Dep. at 6–7.) In addition, Yeh was responsible for ensuring orders were correct and occasionally stood in as a cashier, a

---

[2] The 3.85% figure exceeds the amount stated in Chen's deposition by .05%. (Chen Dep. 9–10.) Chen noted at his deposition, however, that he was unsure, and that his accountant was in a better position to know the exact amount. *Id.* at 13–14. Any contradiction is excused because the issue "was not thoroughly or clearly explored in the deposition," and may be regarded as more in the nature of "amplif[ication] or explan[ation]" of prior testimony. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000); *see Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999). In any event, the amount stated in Chen's affidavit (3.85%), when combined with the amount of tax withholding (7.65%), equals a total of 11.5% withheld, a figure that plaintiffs do not dispute. (Pls.' 56.1 Stmt. ¶ 6 ("Defendants retained 11.5% of plaintiffs' tips each night.").)

post usually reserved for Moca management. (Dep. of Victor Utama (Doc. No. 49-10) at 33, 36, June 3, 2010). Defendants paid Yeh a fixed salary. (Chen Dep. at 7.)

On December 16, 2010, plaintiffs moved for partial summary judgment as to liability under the minimum wage and tip credit provisions of the FLSA and New York Labor Law, pursuant a briefing schedule established at a pre-motion conference on October 28, 2010. (*See* Pls.' Mot. for Summ. J. (Doc. No. 48) at 1; Minute Entry dated Oct. 28, 2010 (Doc. No. 34) (establishing briefing schedule).) On December 13, 2010, defendants moved for partial summary judgment dismissing the claims of Ng.[3] (Defs.' Cross-motion for Summ. J. (Doc. No. 45) at 5).

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the non-moving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*,

---

[3] Defendants' summary judgment motion also asks that the claims of former plaintiff Min Joongkin Kim be dismissed for failure to prosecute. On August 10, 2010, however, this court adopted the Report and Recommendation of Magistrate Judge Cheryl Pollack and ordered that Kim's claims be dismissed for failure to comply with Rule 37 of the Federal Rules of Civil Procedure and otherwise failing to prosecute this action. *See* Report and Recommendation of Magistrate Judge Cheryl L. Pollack (Doc. No. 30) at 1; Order Adopting Report and Recommendations (Doc. No. 32) at 1. As such, defendants' request that Kim's claims be dismissed is DENIED AS MOOT. Moreover, this Court's Individual Rule III(A)(2) requires, however, that prior to making any dispositive motion – such as a motion for summary judgment – the movant request by letter a pre-motion conference outlining the grounds for the motion. Defendants' motion was filed without a pre-motion conference, or letter notice. Despite defendants' disregard of the Court's Individual Rules, the Court shall entertain defendants' motion as though they complied.

398 U.S. 144 (1970); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P.56(e)). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 58. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

**DISCUSSION**

The federal minimum hourly wage until July 23, 2009 was $6.55. Beginning July 24, 2009, the minimum wage increased to $7.25. The state minimum wage was $7.15 until July 24, 2009, at which point it, too, increased to $7.25.[4] *See* 29 U.S.C. § 206; N.Y. Lab. Law § 652(1). However, under state and federal law, employers may deduct from the hourly wage of tipped employees an amount known as the "tip credit," designed to account for the tips received, provided that "all tips received by [the] employee have been retained by the employee." 29 U.S.C. § 203(m); *see also* N.Y. Codes, R. & Regs. § 146-1.3; N.Y. Lab. Law § 196-d. The tip credit allowed employers to pay tipped employees $4.60 per hour until July 24, 2009, and $4.65 thereafter. N.Y. Codes, R. & Regs. § 137-1.5 (2009); *see also, e.g.*, *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) (holding that employers are not entitled to the tip credit under state or federal law if they retain any portion of employees' tips); *accord Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-CV-1608 (RJH), 2011 WL 2127808, at *26 (S.D.N.Y. May 27, 2011). Under New York law, moreover, employers are prohibited from retaining any part of employees' tips, even if the employee is paid the minimum wage. N.Y. Lab. Law § 196-d.

---

[4] Where a state establishes a higher minimum wage than that specified in the FLSA, the state wage controls; where the federal wage is greater, it controls. *See* 29 U.S.C. § 218(a); *Lanzetta v. Florio's Enters., Inc.*, 08-CV-6181 (DC), 2011 WL 3209521, at *2 (S.D.N.Y. July 27, 2011).

Plaintiffs claim that both the restaurant and its principal, defendant Chen, improperly retained a portion of their tips,[5] thus preventing them from using the tip credit to allow payment of less than the minimum hourly wage.[6] Plaintiffs cite three different ways in which defendants retained their tips. First, Utama claims that Yeh is an "employer" for purposes of the FLSA and New York Labor Law, so that requiring tip-sharing was improper. Second, plaintiffs claim that defendants' failure to pay credit card tip withholdings to the IRS amounted to tip retention. Third, plaintiffs claim that defendants' deduction from credit card tips to cover processing fees was improper and unsupported. Each ground is discussed in turn.

I. **Tip sharing with an employer**

Plaintiff Utama claims that defendants retained his tips by forcing him to share his tips with sushi chef Yeh, who plaintiffs' claim is an "employer" under the statute, for the period following August 10, 2009.[7] (Pls.' 56.1 Stmt. ¶ 11; Defs.' 56.1 Cntrstmt ¶ 11.) Defendants do

---

[5] Defendants' failure to dispute plaintiffs' contention that the FLSA and New York Labor Law apply both to Chen, an individual, and Moca, a corporate entity, amounts to an abandonment of this claim. *See Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Moreover, Moca is an "enterprise engaged in commerce," and therefore an employer for purposes of the FLSA and state law, because plaintiffs handled goods that moved in interstate commerce, and defendants' annual gross sales exceeded $500,000. *See* 29 U.S.C. § 203(s)(1); N.Y. Lab. Law § 651; *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 291 (E.D.N.Y 2007); Defs.' 56.1 Cntrstmt ¶ 3; Utama Aff. ¶ 7. Chen, a principal of Moca, is responsible for the general management of Moca, as well as day-to-day operations, hiring and firing, setting pay, and supervising employees. (Defs.' 56.1 Cntrstmt ¶ 2; Pls.' 56.1 Stmt. ¶ 2.) Therefore, the undisputed facts demonstrate that Chen is an "employer," and may be held personally liable for violations of the FLSA and New York Labor Law. *See Ling Nan Zheng v. Liberty Apparel Co., Inc.*, 556 F. Supp. 2d 284, 298 (S.D.N.Y. 2008) ("[I]ndividual officers or directors of [the employer-] corporation may also be deemed employers under the FLSA where 'the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions.'" (quoting *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y 2003)) (some internal quotation marks omitted)); *see also Jiao v. Shi Ya Chen*, No. 03-CV-165 (DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) (defining "employer" for purposes of New York Labor Law coextensively with the FLSA's definition); *accord Topo v. Dhir*, No. 01-CV-10881 (PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004); *Jankowski v. Castaldi*, No. 01-CV-164 (SJK)(KAM), 2006 WL 118973, at *8 n.5 (E.D.N.Y. Jan. 13, 2006).

[6] All plaintiffs, except Ng, claim defendants paid them less than minimum wage and retained part of their tips. Therefore, all plaintiffs, except Ng, claim a violation of both federal and state law. Plaintiffs concede, however, that Ng does not have a federal claim because he was paid at least minimum wage and federal law only proscribes the retention of tips if the employee is paid less than minimum wage. 29 U.S.C. § 203(m). Plaintiffs do, however, contend that Ng has a state law claim, as New York law proscribes the retention of tips regardless of the employee's wage. N.Y. Lab. Law § 196-d.

[7] Plaintiffs concede that no plaintiffs other than Utama shared tips with Yeh. (Pls.' Reply at 4.)

not dispute that they required Utama to share tips with Yeh, but contend that Yeh was not an employer. (Defs.' 56.1 Cntrstmt ¶ 11.) Sharing tips with an employer constitutes an employer's retention of tips, thus violating both the FLSA tip credit conditions, 29 U.S.C. 203(m), and New York Labor Law § 196-d. *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 308 (S.D.N.Y. 1998) (Chin, J.); *Chan v. Triple 8 Palace, Inc.*, 03-CV-6048 (GEL), 2006 WL 851749, at *14 (S.D.N.Y. Mar. 30, 2006) ("[E]mployers are not merely barred from taking the tip credit if they share in the tip pool, but they are barred from taking the tip credit if any person who does not 'customarily and regularly receive tips' shares in the tip pool."). *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, 08-CV-3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (Chin, J.) ("New York law provides that an employer may not demand or accept 'directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee .' " (quoting N.Y. Lab. Law § 196-d)).

Generally, factors governing the determination include: "[1] [the] authority to suspend or terminate employees . . . ; (2) supervision of the wait staff and [making] hiring decisions; (3) [taking] responsibility for the restaurant's budget, including analyzing payroll and food costs; and (4) receipt of a salary . . . regardless of the number of hours . . . worked." *Ayres*, 12 F. Supp. 2d at 308. The most significant factor in determining whether a person is an "employer" is the power to hire, fire, or discipline other employees. *In re Starbucks Emp. Litig.*, 264 F.R.D. 67, 72 (S.D.N.Y. 2009) ("[F]rom this case law emerges the proposition that persons without the capacity to hire, fire, or discipline other employees . . . are not agents [of the employer]."); *Garcia v. La Revise Assocs.*, No. 08-CV-9356 (LTS)(THK), 2011 WL 135009, at *6 (S.D.N.Y. Jan. 13, 2011) ("While no single factor is dispositive in this analysis, courts consider whether the alleged employer had the power to hire and fire employees, supervise and control their work

schedules or conditions of employment, determine their rates and methods of payment, or maintain their employment records.").

Here, defendants' undisputed testimony establishes that Yeh is an "employer," such that the sharing of tips with him violated the FLSA and New York Labor Law. In deposition testimony, Chen admitted that Yeh had the power to hire, fire, and set the wages of other employees. (Chen Dep. at 6.)[8] Moreover, the record shows that Yeh supervised staff, made hiring decisions, and made budgetary decisions, including food purchasing. The record shows also that Yeh received a salary. (*Id.* at 8.) It is irrelevant that Yeh's duties differed from other acknowledged "managers" at Moca, or that Moca did not designate Yeh a "manager;" Yeh's duties identify him as an employer, not the defendants' designation or the division of labor amongst their managers. *See Scott v. SSP Am., Inc.*, No. 09-CV-4399 (RRM)(VVP), 2011 WL 1204406, at *13 (E.D.N.Y. Mar. 29, 2011); Aff. of Johnson Chen (Doc. No. 45-3) ("Chen Aff.") ¶ 19. Therefore, the Court finds that Yeh is an "employer" for purposes of New York Labor Law and the FLSA, and, therefore, defendants violated the tip credit and minimum wage provisions of the FLSA and New York Labor Law when they required Utama to share tips with Yeh for the period following August 10, 2009.

---

[8] Chen's deposition contained the following colloquy:
>    Q: Is [Yeh] able to hire sushi chefs?
>    A: Yes.
>    Q: And fire sushi chefs?
>    A: Yes.
>    Q: And supervise sushi chefs?
>    A: Yes.
>    Q: And he's able -- does he make the schedules for the sushi chefs?
>    A: Correct.
>    Q: Does he purchase goods for the sushi department chefs?
>    A: Yes.
>    Q: Does he set the pay of the sushi chefs?
>    A: Yes.
>    Q: Is he paid a salary?
>    A: Yes.

(Chen Dep. at 6–7.)

### II. Tax withholding

Tips are subject to the withholding of payroll taxes, including those required under the income tax provisions and the Federal Insurance Contributions Act ("FICA"). *See* 26 C.F.R. § 31.3402(k)-1(a). To perform the withholding, employees are required to report their tips to their employers, who then deduct the withholdings from the employee's subsequent paycheck. *Id.*; *accord* Mary Simon, *Structuring a 401(k)*, 45 Prac. Tax Strategies 294, 294–95 (1991); I.R.S. Taxpayer Info. Pub. 17, *Reporting Tips on Your Tax Return* (Dec. 1, 2010), *available at* 2010 WL 5017303. The employer is then required to pay the withheld amounts to the IRS. *See Salzillo v. United States*, 66 Fed. Cl. 23, 31 (Fed. Cl. 2005). Defendants' sworn deposition and Rule 56.1 statement establish, however, that defendants deducted payroll taxes from plaintiffs' credit card tips every night, *i.e.*, not from subsequent paychecks following plaintiffs' reports. (*See* Pls.' 56.1 Stmt. ¶ 4; Defs.' 56.1 Cntrstmt ¶ 4; Chen Dep. at 9.) Defendants' withholding violated the regulation, therefore, as defendants were authorized only to deduct withholdings from "wages (exclusive of tips)." 26 C.F.R. § 31.3402(k)-1(a).

Defendants later purported to change Chen's sworn testimony via a subsequent affidavit to the effect that withholding was actually taken from plaintiffs' wages, rather than tips. (Chen Aff. ¶ 7.) Notwithstanding the general rule precluding the introduction of factual issues by subsequent affidavit replacing prior sworn testimony, defendants' withholding nonetheless remained improper for another reason: defendants' failure to turn over the withheld amounts to the IRS. *See* 26 C.F.R § 31.6302-1(*i*) (requiring remittance of deposited withholdings to IRS); 29 C.F.R. § 531.38; *Salzillo*, 66 Fed. Cl. at 31 (noting employers' obligation to turn over withheld taxes); *see also Perma Research & Dev. Co. v. Singer*, 410 F.2d 572, 578 (2d Cir.

10

1969) (inconsistent affidavits).  Defendants do not dispute their failure to furnish the withheld monies to the IRS.  (*See* Chen Dep. at 11.)

Employers who properly withhold payroll taxes and forward them to the IRS, and consequently reduce a minimum wage employee's net pay, do not violate the FLSA or New York Labor Law because "[t]axes which are assessed against the employee and which are collected by the employer *and forwarded to the appropriate government agency may be included as 'wages.'*"  29 C.F.R. § 531.38 (emphasis added).  Thus, taxes withheld from an employee's wage, but *not* forwarded to the IRS cannot be included in the employee's wage in determining whether an employer has met minimum wage standards.  *See*, *e.g.*, *Carver v. City of N.Y.*, 621 F.3d 221, 230 (2d Cir. 2010) (Winter, J., dissenting) ("Federal regulation expressly allows employers to deduct taxes imposed by the law of any sovereign without regard to the fact that the deduction reduces the net wage below FLSA standards."); Maria Echaveste, U.S. Dep't of Lab., Op. Letter (Jan. 27, 1997), *available at* 1997 WL 959133.

Defendants claim, however, that their obligation was excused by plaintiffs' failure to provide their Social Security numbers.  Defendants have not identified any authority to support their contention and the Court, also finding none, concludes that defendants' contention is meritless.  Indeed, to the contrary, the Internal Revenue Code requires employers to turn over the amounts withheld though lacking employees' Social Security numbers, although the employer may be subject to a fine.  *See* 26 U.S.C. §§ 6722–6723; 20 C.F.R. § 422.120 (procedure for reporting wages where employer lacks employee's Social Security Number); *see also* I.R.S. Info. Letter 2000-0043 (June 30, 2000), *available at* 2000 WL 33961437 (explaining the effect of forwarding amounts withheld without the employee's Social Security Number, and explaining that "an employer must withhold the employee's share of FICA tax on wages paid and must pay

11

the employer's share of FICA tax on such wages, regardless of whether the employee furnished a Social Security number"). Thus, contrary to defendants' claim, the law does not carve out an exception from the general duty of an employer to forward withholdings where an employee failed to submit a Social Security Number.

Defendants' failure to forward the amounts withheld, therefore, amounts to a naked retention of plaintiffs' tips, in violation of the FLSA and New York Labor Law. Indeed, courts have found that employers' failure to forward purported withholdings for employees earning the minimum wage required the employer to disgorge the withholdings to the employee, because the amount withheld could not be counted as "wages." *See Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 656 (N.D. Ill. 2007) (sufficient factual showing that employer failed to remit withholdings would prevent employer from claiming tip credit, entitling employee to summary judgment on FLSA minimum wage claim); *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 273 (S.D.N.Y. 2000) (award of minimum wage back pay would require withholding and remittance of withholdings to federal and state governments); *Fields v. Luther*, No. 84-CV-1875, 1988 WL 59963, at *15 n.26 (D. Md. May 4, 1988); *Frenel v. Freezeland Orchard*, No. A.871-CV-12781-1A, 1988 WL 58061, at *4 (E.D. Va. Apr. 8, 1988); *Certilus v. Peeples*, No. 81-CV-46, 1984 WL 3175, at *9 (M.D. Fla. July 17, 1984); *see also Carver*, 621 F.3d at 230 (Winter, J., dissenting); Opinion Letter, FLSA, 1997 WL 959133. Therefore, the Court finds that defendants' retention of plaintiffs' tips in the guise of "withholding" precludes defendants from invoking the "tip credit," and therefore violates the FLSA and New York Labor Law as a matter of law.

With respect to Utama, however, the above analysis applies only for credit card tips received prior to August 2009, after which defendants properly forwarded Utama's withholdings

to the IRS. With respect to plaintiff Ng, plaintiffs have not adduced any evidence whatsoever to support his claim that credit card tips were subject to any withholding or deduction, and defendants offer Chen's sworn statement that nothing was withheld. (*See* Chen Aff. ¶ 10.) Defendants also submit a spreadsheet detailing the withholdings for each plaintiff, reflecting that nothing was withheld with respect to Ng. (Chen Aff. Ex. A (Doc. No. 45-3), at 1.) Therefore, plaintiffs have failed to demonstrate that defendants violated New York Labor Law in this respect, and defendants have met their burden showing that no violation occurred. As noted above, plaintiffs concede that Ng has no federal claim. As such, defendants' motion seeking summary judgment on Ng's federal and state claims is GRANTED.

### III. Credit card processing fees

Defendants maintain that they incurred a credit card processing fee when customers paid by credit card. A corresponding percentage, the defendants contend, must be deducted from the amount the employee receives as a tip when customers pay by credit card, because the percentage is paid to the credit card company, and is not part of the tip to be retained by the employee. *See* 29 C.F.R. 531.52 (defining a tip as a sum presented "by a customer" received by an employee, where the customer "determine[s] who shall be the recipient of the gratuity"); *id.* § 531.53 (explaining that tips may include "amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips").

Although there is no Second Circuit precedent on point, the Sixth Circuit case *Myers v. Copper Cellar Corp.* supports defendants' contention. 192 F.3d 546, 553–54 (6th Cir. 1999). The Sixth Circuit held that "an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without

13

surrendering its [FLSA § ]203(m) partial set-off against minimum wages." *Id.* at 553.  The Sixth Circuit reasoned, "[b]efore an employee can be entitled to attain any funds on account of a charged customer gratuity, that debited obligation must be converted into cash.  The liquidation of the restaurant patron's paper debt to the table server required the predicate payment of a handling fee to the credit card issuer.  Accordingly, the employee could only have been entitled to receive the cash proceeds of the charged tip net of liquidation expenses." *Id.* at 553–54.  To hold otherwise, the Sixth Circuit explained, would amount to the employee receiving more than the customer intended, with the employer making up the difference. *Id.* at 554.  A number of courts to have confronted the issue appear to have sided with the Sixth Circuit, allowing restaurant issuers to deduct an amount from charged tips that reasonably compensates the restaurant for liquidation fees.  *See Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1371 (S.D. Fla. 2009); *Gillis v. 23 E. Adams St. Corp.*, No. 04-CV-4012, 2006 WL 573905, at *3 (N.D. Ill. Mar. 6, 2006); *Bollenberg v. Landry's Rest.*, No. Civ.A. H-03-68, 2005 WL 2121810, at *3 (S.D. Tex. Aug. 30, 2005); *see also Nicholson v. Twelfth St. Corp.*, No. 09-CV-1984 (HB), 2010 WL 1780957, at *2 (S.D.N.Y. May 4, 2010) (deducting ten percent as processing fees from charged tips is improper, without regard to whether a lesser percentage may be proper); *Reich v. Priba Corp.*, 890 F. Supp. 586, 594–95 (N.D. Tex. 1995).  This Court adopts the well-reasoned position of the Sixth Circuit in *Myers* and holds that an employer may deduct from credit card tips an amount reasonably necessary to compensate it for fees incurred in liquidating or settling credit card transactions.

Although defendants were entitled to deduct from charged tips an amount necessary to compensate for credit card processing fees, defendants have failed to adduce sufficient evidence showing that the amounts withheld were pursuant to an agreement with the credit card

14

companies. *See Myers*, 192 F.3d at 554–55 ("[T]he employer must prove that its total deductions from employees' tip incomes did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period."); *accord Ash*, 676 F. Supp. 2d at 1372. Imposing this duty on defendants is reasonable, as the employer is obviously in the best position to know the terms of its own credit card agreements, and it is consistent with the employer's firmly established duties to maintain accurate records for FLSA purposes in other contexts. *See, e.g.*, *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[A]n employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable," and "an employer 'cannot . . . transfer his statutory burdens of accurate record keeping, and of appropriate payment, to the employee.' " (quoting *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 944, 946 (2d Cir. 1959) (Friendly, J.))); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) ("In determining whether the plaintiffs received the minimum wage and overtime, we start with the premise that the employer is obligated to maintain records of wages and hours."); *see also Cont'l Airlines, Inc. v. Lelakis*, 129 F.3d 113 (table), No. 96-9712, 1997 WL 701363, at *2 (2d Cir. Nov. 10, 1997) (" 'Where a plaintiff uses a summary judgment motion . . . to challenge the legal sufficiency of an affirmative defense . . . a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's case].' " (alterations in original) (quoting *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994))).

Here, defendants offer only Chen's affidavit to support their claim that the 3.85% deduction was necessary to offset the fees imposed by credit card issuers. (Chen Aff. ¶ 6.) This bare assertion is insufficient to meet defendants' burden. *See M & T Mortg. Corp. v. White*, 736

15

F. Supp. 2d 538, 553 (E.D.N.Y. 2010) ("conclusory, *ipse dixit* assertions are not sufficient to defeat summary judgment. 'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat summary judgment. Rather, 'there must be evidence on which the jury could reasonably find for the [non-movant].' " (internal citation omitted) (quoting *Cousin v. White Castle System, Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009))). This is especially true where plaintiffs repeatedly requested that defendants produce their credit card agreements, and defendants persistently failed to do so. (*See* Pls.' Doc. Req. (Doc. No. 49-13) at ¶ 31; Chen Dep. at 14–15; Fed. R. Civ. P. 37(c).) Therefore, the Court finds that defendants' retention of 3.85% of plaintiffs' credit card tips was improper under the FLSA and New York Labor Law because defendants have failed to adduce more than a scintilla of evidence supporting their entitlement to the deduction as reasonably necessary to compensate for credit card processing fees.

With respect to plaintiff Ng, however, plaintiffs have not adduced any evidence whatsoever to support his claim that his credit card tips were subject to any deduction for credit card fees, and defendants have offered Chen's sworn statement that nothing was deducted. (*See* Chen Aff. ¶ 10.) Defendants also have submitted a spreadsheet detailing the withholdings for each plaintiff, reflecting that nothing was withheld with respect to Ng. (Chen Aff. Ex. A, at 1.) Therefore, plaintiffs have failed to show that defendants violated New York Labor Law in this respect, and defendants have met their burden to show that nothing was deducted, and therefore no violation occurred. As noted above, plaintiffs concede that Ng has no federal claim.

### IV. Liquidated damages

"Under § 16(c) of the FLSA, 29 U.S.C. § 216(c), an employer who violates the compensation provisions of the Act is liable for unpaid wages 'and an additional equal amount as

16

liquidated damages.' " *Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). "Liquidated damages under the FLSA are presumed in every case where violation of the statute is found." *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672 (NGG)(MDG), 2010 WL 5477727, at *6 (E.D.N.Y. Dec. 30, 2010) (citing 29 U.S.C. § 260). To rebut the presumption, defendant must show that it acted in good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987); *see* 29 U.S.C. § 260. Defendant's burden "is a difficult one to meet," and "double damages are the norm." *Brock*, 833 F.2d at 19; *see Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) ("[e]mployers wilfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements."). "To establish 'good faith,' a defendant must produce 'plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it.' " *Reich*, 121 F.3d at 71 (quoting *Brock*, 833 F.2d at 19).

Similarly, a violation of the New York Labor Law is willful, warranting an award of 25% liquidated damages in addition to lost wages, where the employer "knowingly, deliberately, [or] voluntarily" disregards its obligation to pay wages. *P&L Grp., Inc. v. Garfinkel*, 541 N.Y.S.2d 535, 537 (App. Div. 1989). No finding of malice or bad faith, however, is necessary. *See In re CIS Corp.*, 206 B.R. 680, 689 (Bankr. S.D.N.Y. 1997). A violation is willful, moreover, where a defendant shows "reckless disregard" as to whether its conduct is prohibited by the Labor Law. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337–38, 341 (S.D.N.Y. 2005).

Beyond the most conclusory of statements, defendants have submitted nothing to rebut the presumption of liquidated damages to which plaintiffs are entitled. (*See, e.g.*, Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. (Doc. No. 50) at 14 ("[I]t is contrived to deduce that defendants

17

failed to act in good faith. . . . [I]t is clear that defendants acted in good faith with an honest intention to comply with FLSA.").)  It strains credulity to believe that defendants' retention of its employees' tips, purportedly in order to furnish the monies to the government, and subsequent failure to furnish the monies to the government, was borne out of any " 'active steps to ascertain the dictates of the FLSA,' " let alone any " 'act[ ] to comply with them.' "  *Gayle*, 2010 WL 5477727, at *6 (quoting *Reich*, 121 F.3d at 71).  Likewise, defendants offer no evidence to suggest that the retention of tips for credit card fees without keeping records supporting the deduction, and the failure adequately to ensure that the employees' tips were pooled properly to avoid managerial participation, were borne out of "reasonable inquiry" or reliance on professional advice.  *Ayres*, 12 F. Supp. 2d at 309 ("[Defendant restaurant] offers no evidence, however, that it made reasonable inquiries into the relevant law, or that it actually reviewed its own tip pooling practices, or that it relied on the advice of counsel as to the lawfulness of [the manager's] continued participation in the pool or [the restaurant's] entitlement to the tip credit."); *see Doo Nam Yang*, 427 F. Supp. 2d at 340 (holding that defendant restaurant failed to rebut presumption where it failed to pay Social Security withholdings for its employee, keep adequate records, or pay overtime); *see also Reich*, 121 F.3d at 71  (employees entitled to liquidated damages for employer's failure to pay employees during restricted lunch shifts, although employer followed industry practice, no employee complained, and employer relied on an opinion letter from the Department of Labor).

Accordingly, the Court finds that plaintiffs are entitled to liquidated damages under the FLSA and New York Labor Law, except for Ng, with respect to whom defendants have shown that no violation of state or federal law occurred.

## CONCLUSION

Accordingly, plaintiffs' motion for summary judgment establishing liability (Doc. No. 48) is GRANTED in its entirety with respect to plaintiffs Widjaja, Utama and Gunardi, and DENIED with respect to plaintiff Ng. Defendants' motion for summary judgment (Doc. Nos. 45, 52, 53) is GRANTED with respect to all claims filed by plaintiff Ng, and DENIED AS MOOT with respect to plaintiff Kim, who was previously dismissed from this action.

As only the issue of damages remains as to plaintiffs Widjaja, Utama and Gunardi, this matter is re-committed to the assigned Magistrate Judge for supervision of any settlement discussions, and all remaining pre-trial issues consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
      September 26, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge