# KEVIN KERVENG TUNG, P.C.

Kevin K. Tung *
Lu He
Wei Sun
Kenji Fukuda
Helen Wu
Andrew D. Solomon *

*Attorneys at Law*

136-20 38th Avenue, Suite 3D
Flushing, New York 11354
(718) 939-4633
Facsimile (718) 939-4468

Song Chen
Shengming Shi
Ge Li
Jia Lei
Zheng Gao
Mengyao Wang
Cong Nie

Also Admitted In New Jersey

Writer's E-Mail:
ktung@kktlawfirm.com

April 30, 2014

Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    Widjaja et. al. v. Kang Yue USA Corporation et. al.
       Civil Action No.: 09-cv-02089-RRM-CLP

Dear Hon. Mauskopf:

We are writing in response to plaintiffs' letter dated April 25, 2014.  We will address damages sought in each Section by the plaintiffs.

A.    Tip Credit Damages

In this Section, the plaintiffs are seeking damages in the difference in the amount of $2.50 between the minimum wage of $7.15 and the base wage in the amount of $4.65 paid by the defendant over the periods of time all the plaintiffs worked at the defendant's restaurant.  The total amount sought by the plaintiffs is $5,598.75.  Adding FLSA and NYLL liquidated damages to the original amount, the total amount becomes $12,597.18.

This damage shall not be allowed for the very simple reason.  This court in the Decision dated September 26, 2011 never ruled that the tips on top of the base salary received by the plaintiffs shall not be counted toward the calculations of the minimum wages actually received by the plaintiffs.

The decision disallowed the defendant to retain part of the tips for credit card processing fees and tax withholdings and disallowed tip sharing with sushi chef Yeh.  In fact, all of the plaintiffs testified during their respective depositions that they did receive tips on top of base wages of $4.65 per hour.  Most of the times, the tips were over one hundred dollars per day per one employee.  The relevant pages of the depositions are annexed herewith as Exhibit "A".

By allowing the plaintiffs to recover under this section will create a situation that the plaintiffs receive a double recovery, because plaintiffs sought the disallowances in later sections of the damages calculations.  In another words, if the plaintiffs recover their damages for the tips that were retained by the defendant and the tips shared by the sushi chef, plus federal and state liquidated damages, plaintiffs' claims are fully compensated.

B.      Tip Retention Damages

In this section the plaintiffs are seeking the total 11.5% tips that were not allowed to be retained by the Court.  This 11.5% consists of 3.85% for credit card processing expense and 7.65% for withholding taxes.  The total amount was $749.86 for withholding taxes and $334.90 for credit card processing fees.  The plaintiffs have already conceded to this calculations made by the defendant in the prior letters.  (Exhibit "B") Therefore, before adding liquidated damages, the total basic damages should be $$1,084.76. (Exhibit "C")

After adding federal and state liquidated damages, the total damages should be $2,440.71. (FLSA: $1,084.76x100%=$1,084.76, NYLL: $1,084.76x25%=271.19, Total Damages: $1,084.76+1,084.76+271.19=$2,440.71)

Defendant does not dispute the damage sought by the plaintiff for sharing tips with sushi chef Yeh in the amount of $1,443.75 in Section B(iii).

Therefore, the total damages in Section be should be $2,440.71 + $1,443.75=3,884.46.   This calculation does not even take into consideration that the defendant did provide credit card fees application to the plaintiff, which would allow the defendant to deduct 3.85% credit card processing fees. (Exhibit "D")

C.      FICA Deductions

The damages sought by the plaintiffs in this Section shall not be allowed, because the same damages have been included in Section B calculation.  The 7.65% deductions have been included in the calculation in Section B.

For the foregoing reasons, the total damages of $3,884.46 shall be awarded to the plaintiffs in this action.  The defendant agrees to offer $4,000 to settle the claims in this action to avoid a trial on the calculations of the damages.

Very truly yours,

Kevin K. Tung

Exhibit "A "

1

2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
3    ------------------------------------------X
     JOHANES WIDJAJA, ERNIE NG, MIN JOONGKIN
4    KIM, and AMPRI GUNARDI,

5                                    PLAINTIFFS,

6

7              -against-          Case No:
                                  09-2089
8

9

10   KANG YUE USA CORPORATION d/b/a MoCA ASIAN
     BISTRO, and JOHNSON CHEN,
11
                                 DEFENDANTS.
     ------------------------------------------X
12

13                         DATE: June 3, 2010

14                         TIME: 2:43 p.m.

15

16             EXAMINATION BEFORE TRIAL of the

17   Plaintiff, AMPRI GUNARDI, taken by the

18   Defendant, pursuant to a Court Order and to

19   the Federal Rules of Civil Procedure, held

20   at the offices of KEVIN KERVENG TUNG, P.C.,

21   38-21 Main Street, Flushing, New York

22   11354, before Melody Garcia, a Notary

23   Public of the State of New York.

24

25

```
1

2      A P P E A R A N C E S:

3

4      JOSEPH & HERZFELD, LLP.
              Attorneys for Plaintiffs
5             JOHANES WIDJAJA, ERNIE NG,
              MIN JOONGKIN KIM and
6             AMPRI GUNARDI
              757 Third Avenue, 25th Floor
7             New York, New York 10017
              BY: D. MAIMON KIRSCHENBAUM, ESQ.
8

9

10     KEVIN KERVENG TUNG, P.C.
              Attorney for Defendants
              KANG YUE USA CORPORATION
11            d/b/a MoCA ASIAN BISTRO
              and JOHNSON CHEN
12            38-21 Main Street, Suite 3D
              Flushing, New York 11354
13

14

15     ALSO PRESENT:

16            Johanes Widjaja

17            Johnson Chen

18            Sunny Chen

19            Lu He, sitting-in

20
                   *          *          *
21

22

23

24

25
```

<pre>
 1                      A. GUNARDI

 2   understanding of that money?  What was your

 3   understanding?

 4            A.     That's my hours, yeah.

 5            Q.     That's the basic --

 6            A.     Basic salary.

 7            Q.     -- MoCa was paying you?

 8            A.     Yes, minus 7.65 percent.  They

 9   write it down.

10            Q.     How much do they pay you, the

11   gross salary, I mean the gross amount, how

12   much do they pay you per hour?

13            A.     Four sixty-five per hour.

14            Q.     Four sixty-five per hour?

15            A.     Yes, minus 7.65 percent.

16            Q.     Tax?

17            A.     I don't know that one is for

18   tax or not.  I don't know.  That's what

19   they told him.

20            Q.     That's what they told you?

21            A.     Yeah.

22            Q.     Other than the base salary that

23   you received from MoCa, do you receive

24   anything else?

25            A.     Tips.
</pre>

Tips?

23

```
 1                    A. GUNARDI
 2         Q.     For all of those hours that you
 3    worked for MoCa on a weekly basis, how much
 4    tips do you receive on a weekly basis?
 5         A.     We can make, like, I think it's      } tips
 6    around eight, 80, 90 one night.  If you
 7    worked the whole day, you can make 120,
 8    130.
 9         Q.     All day?
10         A.     The whole day, lunch and
11    dinner, I mean.
12         Q.     For the day that you had to
13    work for lunch and dinner, how many hours
14    do you put in?
15         A.     The whole day, I think more
16    than 10 hours.  It's maybe 12 hours.
17         Q.     It's 10 to 12 hours?
18         A.     Yes.  Sometimes we close at
19    11:00, right?  The boss has some party.  We
20    have to take care of them, like, to 12:00.
21         Q.     For a typical evening, how many
22    hours do you have to put in to work for
23    MoCa?
24         A.     Typical what?
25         Q.     You said you serve dinner.
```

1

2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
3  -----------------------------------------X
   JOHANES WIDJAJA, ERNIE NG, MIN JOONGKIN
4  KIM, and AMPRI GUNARDI,

5
                                  PLAINTIFFS,
6

7          -against-          Case No:
                              09-2089
8

9
   KANG YUE USA CORPORATION d/b/a MoCA ASIAN
10 BISTRO, and JOHNSON CHEN,

11                            DEFENDANTS.
   -----------------------------------------X
12

13                    DATE: June 3, 2010

14                    TIME: 2:24 p.m.

15

16          EXAMINATION BEFORE TRIAL of the

17 Plaintiff, JOHANES WIDJAJA, taken by the

18 Defendant, pursuant to a Court Order and to

19 the Federal Rules of Civil Procedure, held

20 at the offices of KEVIN KERVENG TUNG, P.C.,

21 38-21 Main Street, Flushing, New York

22 11354, before Melody Garcia, a Notary

23 Public of the State of New York.

24

25

1

2       A P P E A R A N C E S:

3

4       JOSEPH & HERZFELD, LLP.
                Attorneys for Plaintiffs
5               JOHANES WIDJAJA, ERNIE NG,
                MIN JOONGKIN KIM and
6               AMPRI GUNARDI,
                757 Third Avenue, 25th Floor
7               New York, New York 10017
                BY: D. MAIMON KIRSCHENBAUM, ESQ.

8

9

10      KEVIN KERVENG TUNG, P.C.
                Attorney for Defendants
                KANG YUE USA CORPORATION
11              d/b/a MoCA ASIAN BISTRO
                and JOHNSON CHEN
12              38-21 Main Street, Suite 3D
                Flushing, New York 11354

13

14      ALSO PRESENT:

15
                Ampri Gunardi
16
                Johnson Chen
17
                Sunny Chen
18
                Lu He - sitting-in
19

20                  *          *          *

21

22

23

24

25

```
 1                   J. WIDJAJA
 2        A.    In the first week, he paid by
 3   the -- not by the hour.  They paid like
 4   $700 per week for me.
 5        Q.    $700 per week for the first
 6   week?
 7        A.    For the first open.
 8        Q.    First open week?
 9        A.    Yeah, after that it goes to
10   $4.60 per hour.
11        Q.    $4.60 per hour?
12        A.    Yes, plus tip.
13        Q.    You worked there six days,
14   right?
15        A.    Yes.
16        Q.    Which day is your off day?
17        A.    Sunday.
18        Q.    How much tips do you receive on
19   a typical day?  First of all, if you can
20   answer, does that vary from Monday through
21   Saturday?
22        A.    You asked me by the week,
23   right?
24        Q.    Well, let's go by day.
25        A.    It's, like, Monday to
```

*Tips* (handwritten annotation)

J. WIDJAJA

1

2    Wednesday.  If I work, like four shifts,

3    that means lunch and dinner.  I will earn    } tips

4    about $100 to $120.

5         Q.    That's from lunch to dinner,

6    right?

7         A.    Yeah.

8         Q.    And that a typical 10 to 12

9    hours work for you?

10        A.    It's my Monday to Wednesday.

11        Q.    How much do you make on tips on

12   Thursday?

13        A.    130 to 150.

14        Q.    For Friday?

15        A.    Friday and Saturday, I can make

16   like $160.

17        Q.    Tips?

18        A.    Yes.

19        Q.    All of those days you work

20   about 10 to 12 hours, like you said before,

21   right?

22        A.    Yes.

23        Q.    When you're coming to work, you

24   had to sign in, you had to sign out on a

25   computer, right?

1

2 UNITED STATES DISTRICT COURT
  EASTERN DISTRICT OF NEW YORK
3 ------------------------------------------X
  JOHANES WIDJAJA, ERNIE NG, MIN JOONGKIN
4 KIM, and AMPRI GUNARDI,

5

                                    PLAINTIFFS,
6

7          -against-          Case No:
                              09-2089
8

9 KANG YUE USA CORPORATION d/b/a MoCA ASIAN
  BISTRO, and JOHNSON CHEN,
10

                                    DEFENDANTS.
11 ------------------------------------------X

12                      DATE: June 3, 2010

13                      TIME: 1:44 p.m.

14

15              EXAMINATION BEFORE TRIAL of the

16    Witness, VICTOR UTAMA, taken by the

17    Defendant, pursuant to a Court Order and to

18    the Federal Rules of Civil Procedure, held

19    at the offices of KEVIN KERVENG TUNG, P.C.,

20    38-21 Main Street, Flushing, New York

21    11354, before Melody Garcia, a Notary

22    Public of the State of New York.

23

24

25

```
 1

 2     A P P E A R A N C E S:

 3

 4     JOSEPH & HERZFELD, LLP.
            Attorneys for Plaintiffs
 5         JOHANES WIDJAJA, ERNIE NG,
           MIN JOONGKIN KIM and
 6         AMPRI GUNARDI
           757 Third Avenue, 25th Floor
 7         New York, New York 10017
           BY: D. MAIMON KIRSCHENBAUM, ESQ.
 8

 9

10     KEVIN KERVENG TUNG, P.C.
            Attorney for Defendants
           KANG YUE USA CORPORATION
11         d/b/a MoCA ASIAN BISTRO
           and JOHNSON CHEN
12         38-21 Main Street, Suite 3D
           Flushing, New York 11354
13

14

15     ALSO PRESENT:

16         Johanes Widjaja

17         Ampri Gunardi

18         Johnson Chen

19         Sunny Chen

20         Lu He - sitting-in

21              *          *          *

22

23

24

25
```

```
13
```

```
                              V. UTAMA

    1

    2          A.     No.

    3          Q.     What do you mean by 4.65 per

    4     hour?

    5          A.     That's according to the law,

    6     but when I get the money, it's deducted by

    7     7.65 percent.

    8          Q.     When you say "$4.65," is that

    9     the net amount you're taking home or those

   10     are the gross amount they pay you?

   11          A.     That's before taking tax.

   12          Q.     Before taking tax?

   13          A.     Yeah.

   14          Q.     MoCa was paying you $4.62 -- 65

   15     cents an hour?

   16          A.     Yes.

   17          Q.     Before any taxes were reduced?

   18          A.     Yes.

   19          Q.     And other than the base salary,        } tips

   20     $4.65 that you received, do you receive any

   21     another compensations such as tips?

   22          A.     Yes.

   23          Q.     On the average, how much did

   24     you receive as tips per hour on the

   25     average?
```

```
 1                    V. UTAMA

 2              MR. KIRSCHENBAUM:  Objection.

 3       Q.    If you know.

 4              MR. KIRSCHENBAUM:  That's a

 5        strange question.

 6       A.    No, I can't recall.

 7       Q.    On a particular day, how much

 8   did you receive as your tip?  On a typical

 9   day, not very busy, not very slow down.

10       A.    $50.

11       Q.    $50 per day; is that per day,

12   per your work day?

13       A.    It depends on the day;

14   sometimes $50, yeah.

15       Q.    That's a regular day, not too

16   busy, not --

17       A.    Monday through Wednesday.

18       Q.    Monday through Wednesday you

19   can possibly receive $50 per day, right?

20       A.    (Nodding).  Yes.

21       Q.    Then for Thursday and Friday,

22   Saturday, Sunday, would those days make any

23   difference?

24       A.    Yes.

25       Q.    Let's say, how much on a
```

15

```
1                    V. UTAMA
2    typical Thursday did you receive tips?
3         A.    I never worked on Thursday.
4         Q.    What about Friday?
5         A.    Friday, approximately $100.
6               MR. WIDJAJA:  More than that.
7         A.    $100.
8         Q.    For Friday?
9         A.    At first.
10        Q.    Tips?
11        A.    Yes.
12        Q.    What about Saturday?
13        A.    Saturday about 130.
14        Q.    What about Sunday?
15        A.    Sunday, about 100, the whole
16   day.
17        Q.    Now, for those days that you
18   worked at MoCa, do you have a particular
19   schedule, work schedule per week?
20        A.    You mean fixed schedule?
21        Q.    Yes.
22        A.    No, sometimes changes.
23        Q.    What is the longest hours that
24   you had to work in a day, particular day
25   with MoCa?
```

Exhibit "B"

JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
Diane Hester
D. Maimon Kirschenbaum
Matthew D. Kadushin
Amy Zobel
Michael D. Palmer
Denise A. Schulman

Counsel:
Michael DiChiara*
*Also admitted in NJ & MA

233 Broadway, 5th Floor
New York, NY 10279
Phone (212) 688-5640
Fax (212) 688-2548
www.jhllp.com

February 13, 2012

**VIA ECF**

Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>   **Re:   Widjaja et al. v. Kang Yue USA Corporation et al.**
>   **Civil Action No.: 09-cv-02089-RRM-CLP**

Dear Judge Mauskopf,

We represent Plaintiffs in the above-captioned matter and we write respectfully to request a conference with the Court and the parties. The purpose of our request is clarification of this Court's Order of September 26, 2011 granting summary judgment in favor of Plaintiffs. While Plaintiffs see the relief set forth in the Order as perfectly clear, it is apparent that Defendants do not understand the Order. In the pre-trial order submitted after the Court's Order (attached as "Exhibit A"), Defendants ignore the Court's Order almost in its entirety. We are confident that a conference will result in complete agreement between the parties as to damages ending all unresolved matters in the case.[1]

The Court ordered that Defendants pay Plaintiffs damages for the following violations:[2]

>   1. the tip credit that Defendants wrongly applied to their minimum wage, *i.e.,* the difference between the federal minimum wage and the tip credit minimum wage;[3]

---

[1] While we are aware that the Court re-assigned the case to the Magistrate Judge for all pre-trial issues, since the issues we here address involve the interpretation of this Court's order, we believe it would be appropriate to raise this matter before Your Honor.
[2] Plaintiffs' list of damages in the Proposed Pre-Trial Order contains a few minor errors. We therefore refer the Court to the accurate list set forth herein.

1

2. the full 11.5% that Defendants withheld from Plaintiffs' tips through August 2009;[4]

3. the full 7.65% that Defendants withheld from Plaintiffs wages through August 2009;[5]

4. the amount that Mr. Utama was forced to share with Sushi Chef Alex Yeh between August 2009 and December 2009;[6]

5. liquidated damages under the FLSA and New York Labor Law, *i.e.*, double damages under the FLSA and 25% under New York Labor Law.[7]

Plaintiffs' portion of Section 5 of the Joint Proposed Pre-Trial Order lays out the precise breakdown of these damages consistent with this Court's Order. In their submission, however, Defendants' blithely omit the bulk of the relief ordered. This chart sets forth the relief the Court awarded as compared to Defendants' calculations:

| Damages Awarded | Defendants Proposed Pre-Trial Order |
| --- | --- |
| Tip Credit Damages | Omitted |
| 11.5% of withheld tips | Defendants only accounted for 3.85% of withheld tips |
| 7.65% of withheld wages | Acknowledged |
| Amount Mr. Utama was forced to share Sushi Chef Yeh | Omitted |
| Liquidated damages under the FLSA and New York Labor Law penalties | Omitted |

Defendants' refusal to acknowledge the relief set forth in the Order is the only factor preventing a complete and quick pre-trial resolution. Most significantly, the majority of the damages in this case is attributable to the tip credit and liquidated damages which the court unequivocally awarded Plaintiffs. The remaining outstanding damages are minor and Plaintiff would likely concede to Defendants calculations on these matters so that there would be nothing left for a finder of fact to decide. Accordingly, we respectfully

π conceded to Δ's calculat

---

[3] *Widjaja v. Kang Yue USA Corp.*, 2011 U.S. Dist. LEXIS 109007 (E.D.N.Y. Sept. 26, 2011), at *23 ("Therefore, the Court finds that defendants' retention of plaintiffs' tips in the guise of "withholding" precludes defendants from invoking the "tip credit," and therefore violates the FLSA and New York Labor Law as a matter of law.") and at *17 ("Therefore, the Court finds that Yeh is an "employer" for purposes of New York Labor Law and the FLSA, and, therefore, defendants violated the tip credit and minimum wage provisions of the FLSA and New York Labor Law when they required Utama to share tips with Yeh for the period following August 10, 2009.").

[4] *Id.* at *6 ("It is undisputed that defendants did not forward the 7.65% deductions to the Internal Revenue Service…") and at *28 ("Therefore, the Court finds that defendants' retention of 3.85% of plaintiffs' credit card tips was improper under the FLSA and New York Labor Law because defendants have failed to adduce more than a scintilla of evidence supporting their entitlement to the deduction as reasonably necessary to compensate for credit card processing fees.").

[5] *Id.*

[6] *Id.* at *16 ("Here, defendants' undisputed testimony establishes that Yeh is an "employer," such that the sharing of tips with him violated the FLSA and New York Labor Law.").

[7] *Id.* at *32 ("Accordingly, the Court finds that Plaintiffs are entitled to liquidated damages under the FLSA and New York Labor Law…").

2

request that the Court schedule a conference where any perceived ambiguities relating to the Order can be clarified.

Respectfully submitted,

D. Maimon Kirschenbaum

(Enclosures)
Cc:     Kevin K. Tung, Esq

Exhibit "C"

| Name | Time Pired | Total Hours | Total Deduction (7.65%)(FICA) |
|---|---|---|---|
| Victor Utama | 09/02/2008 - 9/6/2009 | 1565 | $533.62 |
| Johanes | 09/02/2008-1/11/2009 | 514.5 | $159.94 |
| Ampri Gunardi | 9/22/2008 - 11/23/2008 | 160 | $56.30 |
| TOTAL | | | $749.86 |

# Kang Yue USA Corp.

### Merchant Account Fee

| | Extra Deducted Amount | | |
| Month | Victor Utama 9/2/08-9/6/09 | Johanes 9/2/08-1/11/09 | Ampri Gunardi 9/22/08-11/23/08 |
|---|---|---|---|
| Sept. '08 | $ 15.25 | $ 15.25 | $ 15.25 |
| Oct. '08 | $ 19.08 | $ 19.08 | $ 19.08 |
| Nov. '08 | $ 18.77 | $ 18.77 | $ 18.77 |
| Dec. '08 | $ 18.86 | $ 18.86 | |
| Jan. '09 | $ 11.73 | $ 11.73 | |
| Feb. '09 | $ 15.39 | | |
| Mar. '09 | $ 17.89 | | |
| Apr. '09 | $ 14.40 | | |
| May '09 | $ 14.61 | | |
| June '09 | $ 14.91 | | |
| July '09 | $ 10.66 | | |
| Aug. '09 | $ 15.29 | | |
| Sept. '09 | $ 11.28 | | |
| | $ 198.11 | $ 83.69 | $ 53.10 |
| | | | $ 334.90 |



# Kang Yue USA Corp.

## Merchant Account Fee

| Month | Total Deposits | Total Charges | Fees % | Total Tips Amount | Merchant A/C Fee | Total Deducted Amnt from Tips (3.85%; 9 persons) | Extra Deducted Amount | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Victor Utama 9/2/08-9/6/09 | Johanes 9/2/08-1/11/09 | Ampri Gunardi 9/22/08-11/23/08 |
| pt. '08 | $ 128,635.89 | $ 3,840.21 | 2.99% | $ 15,870.86 | $ 473.80 | $ 611.03 | $ 15.25 | $ 15.25 | $ 15.25 |
| t. '08 | $ 123,742.72 | $ 3,466.92 | 2.80% | $ 16,380.38 | $ 458.93 | $ 630.64 | $ 19.08 | $ 19.08 | $ 19.08 |
| v. '08 | $ 120,730.49 | $ 3,237.53 | 2.68% | $ 14,461.00 | $ 387.79 | $ 556.75 | $ 18.77 | $ 18.77 | $ 18.77 |
| c. '08 | $ 105,821.83 | $ 2,694.16 | 2.55% | $ 13,015.00 | $ 331.35 | $ 501.08 | $ 18.86 | $ 18.86 | |
| n. '09 | $ 109,187.55 | $ 3,373.92 | 3.09% | $ 13,894.00 | $ 429.33 | $ 534.92 | $ 11.73 | $ 11.73 | |
| b. '09 | $ 100,777.77 | $ 2,679.30 | 2.66% | $ 11,625.00 | $ 309.06 | $ 447.56 | $ 15.39 | | |
| ar. '09 | $ 113,036.05 | $ 2,878.68 | 2.55% | $ 12,354.00 | $ 314.62 | $ 475.63 | $ 17.89 | | |
| r. '09 | $ 99,329.25 | $ 2,725.25 | 2.74% | $ 11,717.00 | $ 321.47 | $ 451.10 | $ 14.40 | | |
| y '09 | $ 110,748.21 | $ 3,253.19 | 2.94% | $ 14,414.00 | $ 423.41 | $ 554.94 | $ 14.61 | | |
| ne '09 | $ 99,351.09 | $ 2,613.21 | 2.63% | $ 10,998.00 | $ 289.28 | $ 423.42 | $ 14.91 | | |
| y '09 | $ 87,024.17 | $ 2,584.60 | 2.97% | $ 10,900.00 | $ 323.73 | $ 419.65 | $ 10.66 | | |
| g. '09 | $ 108,026.19 | $ 2,925.91 | 2.71% | $ 12,052.00 | $ 326.43 | $ 464.00 | $ 15.29 | | |
| pt. '09 | $ 82,747.62 | $ 2,324.77 | 2.81% | $ 9,753.00 | $ 274.01 | $ 375.49 | $ 11.28 | | |
| **Total =** | | $ 38,597.65 | 2.78% | $ 167,434.24 | $ 4,663.21 | $ 6,446.22 | $ 198.11 | $ 83.69 | $ 53.10 |
| | | | | | | **Total =** | | $ | 334.90 |

Exhibit "D"

# KEVIN KERVENG TUNG, P.C.

*Attorneys at Law*

Kevin K. Tung *
Mingli Chen
Chunyang Zhang
Kenji Fukuda
Helen Wu
Wei Sun
Lu He

Song Chen
Wen-Hsien Cheng

136-20 38th Avenue, Suite 3D
Flushing, New York 11354
(718) 939-4633
Facsimile (718) 939-4468

New Jersey Office
2 Executive Drive, Suite 850
Fort Lee, New Jersey 07024
(201) 224-8222
Facsimile (201) 224-9122

Reply To New York Office

Writer's E-Mail:
ktung@kktlawfirm.com

*Also Admitted In New Jersey

October 19, 2011

D. Maimon Kirschenbaum Esq.
Jospeh, Herzfeld, Hester & Kirschenbaum, LLP.
757 Third Avenue, 25th Floor
New York, NY 10017

Re:        Johanes Widjaja et al. v. Kang Yue USA Corporation et al.
Case Number: 1:09-cv-02089-RRM-CLP

Dear Mr. Kirschenbaum:

        Pleased be advised that we have received additional discovery materials from our client.  The following are enclosed with this letter.

-    Merchant Processing Application and Agreement (4 pages)
-    About Merchant's Business (1 page)
-    Merchant Processing Credit Addendum (1 page)

        Thank you very much.

Very truly yours,

Ruofei Xiang
Law Clerk

## MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 1 of 4)

### COMPLETE SECTIONS (1-13)

Merchant # _____   Loc. __1__ of __1__

TeleCheck Subscriber #: _____   Add'l TeleCheck Product Subscriber #: _____

### (1) TELL US ABOUT YOUR BUSINESS

Client
(Your Name LEGAL Name): KANG YUE USA CORP    Store #: 1

☐ Same as Legal Name **or** provide:
DBA / Outlet Name: MOCA ASIAN BISTRO

First / Last
Contact Name: JOHNSON CHEN/ LEO CHENG

(No P.O. Box)
Address: 107-18 70 ROAD    Suite #:    City: FOREST HILLS    State: NY    Zip Code: 11375

Your Business Phone: (718) 268-3333    ☒ Same as Business Phone **or**
Merchant's Customer Service Phone:

Your Fax Phone: (718) 268-3332    Select One for Retrieval Requests:   ☒ (02) Dedicated 24 Hour Fax   ☐ (03) No fax; mail

### (2) MC / VISA / DISCOVER® NETWORK / AMERICAN EXPRESS® FULL SERVICE

| | | | |
|---|---|---|---|
| Your Total Cash and Credit Sales (For All Outlets) | $ 1,000,000.00 | Estimated MC/Visa Average Ticket/Sales Amount: | $ 100.00 |
| Total Annual MC/Visa Volume: (For All Outlets) | $ 1,000,000.00 | Estimated Discover Network Average Ticket for this Outlet: | $ 100.00 |
| Total Annual Discover Network Volume: (For All Outlets) | $ 10,000.00 | Estimated American Express Average Ticket for this Outlet: | $ |
| | | Annual MC/Visa Volume for this Outlet: (For Multiple Outlets Only) | $ |
| Total Annual American Express Volume: (For All Outlets) | $ | Est. Discover Network Annual Sales Vol. for this Outlet: (For Multiple Outlets Only) | $ |
| | | Est. American Express Annual Sales Vol. for this Outlet: (For Multiple Outlets Only) | $ |

### (3) TELECHECK PRODUCTS AND SERVICES

☐ ECA® Warranty    ☐ ECA Verification w/ TRS Collections    ☐ ECA Verification    ☐ TRS Collections Service and Recovery Rate Section
☐ LockBox Warranty    ☐ LockBox Verification    ☐ Check Cashing Warranty    ☐ Check Cashing Verification    ☐ Other: _____
☐ Paper Warranty    ☐ Paper Verification    ☐ COD Warranty    ☐ Mail Order Warranty    Existing Subscriber #: _____

### (4) ENTITLEMENTS

☒ MC / Visa    ☒ Discover Network Full Processing
☐ Voyager Fleet® **or** Existing Voyager Acct #: _____    Annual Voyager Volume: $ _____    ☐ MC Fleet  ☐ Wright Express **or** Existing WEX Acct #: _____
*Tax exempt Voyager Cards accepted:    ☐ Yes   ☐ No
☐ Non-Lic. JCB (EDC) _____ (Existing Account #)    **or**   ☐ JCB License _____ 2809009901
☐ American Express Full Service/EDC   **or**   ☒ Existing SE # _____   Check one: ☐ Split Dial  ☒ Single Settle  ☐ EDC  ☐ PIP  ☐ Reverse PIP
American Express Cap # _____    Franchise Name: _____    SE #: _____
☐ Debit Package _____ 84014239    ☐ EBT    FNS # (XREF): _____    ☐ **FDMS Gift Card    ☐ **FDMS Loyalty Solutions
** A separate Setup Form is required.

### (5) PROVIDE MORE BUSINESS DATA

State Incorp. __NY__   Month/Yr. Started: 10/2007   ☐ Sole Ownership   ☐ Partnership   ☐ Non Profit/Tax Exempt   ☐ Public Corp.   ☒ Private Corp.   ☐ L.L.C.   ☐ Gov't.
Mag Swipe __80__ % + Keyed Manually __20__ % = 100%    Product/Services You Sell: EATING PLACES/RESTAURANTS
POS Card Present (MAG Swipe and/or Manual Imprint) __80__ % + Mail Order/Direct Marketing __0__ % + Phone Order __20__ % + Internet __0__ % = 100%
Do you use any third party to store, process or transmit cardholder data?  ☐ Yes  ☒ No   (Examples include, but not limited to web hosting companies, Electronic Data Capture, Loyalty programs)
If yes, give name/address: _____
Please identify any Software used for storing, transmitting, or processing Card Transactions or Authorization Requests: _____
Check one: TIN Type:  ☒ EIN (Fed Tax ID #)  ☐ SSN   TIN ID # _____ 261241725   D & B #: _____   No. of Employees: __10__

### (6) DESCRIBE EQUIPMENT DETAILS

Network:  ☐ ( )  CARD net®  ☒ ( )  Nashville  ☐ ( )  BuyPass  ☐ Other: _____   Specify Security Code: ( )

| Rental * Purchase Customer-Owned Lease (circle one) | QTY | IP | Equipment Type (i.e. Terminal / VAR / Internet) | Retail * Restaurant * MOTO / Internet Lodging * Supermarket * Car Rental Quick Service Restaurant * Petr | Model Code and Name | Unit Price w/o Tax | For Customer-Owned Equipment Track / Version / Serial # |
|---|---|---|---|---|---|---|---|
| 48 Month Lease | 4 | ☐ | TERM | RESTAURANT | FD100 TERMINAL | 29.94 | |
| | | ☐ | | | | | |
| | | ☐ | | | | | |

**NOTE: Any Special Instructions must be included on About Merchant's Business Page.**

Installation/Training:  ☐ MAG/MIG to Train   (receive training via phone dial 1-800-558-7101 Opt. #1, M-F 8:00 am - 10:00 pm EST and Sat. 10:00 am - 7:00 pm EST)
☐ Sales Rep. to Train   ☐ No Merchant Training   ☒ In-House   ☐ PACT   (Check Training via phone 1-800-366-1054 7:00am - 6:30pm CT)
First/Last Contact Name: ___JOHNSON CHEN/ LEO CHENG___   Contact Phone #: ___(718) 268-3333___   Best Time To Call ___9:00 AM - 4:30 PM___ am/pm
Imprinter Purchase:  ☒ Yes  ☐ No    If Yes $ __50.00__ x Qty: __2__ = $ __100.00__ (w/o Tax)  Wireless Provider: ☐ GPRS Cingular  **or**  ☐ Other: _____
Check one:  ☐ Gateway Solutions  ☐ Dial Solutions  ☐ YourPay  ☐ EFSNET***  ☐ VSAT***  ☐ Frame  ☐ Other: _____   ☐ IC Verify Serial # _____
VAR / Internet / Software:   Name: _____   (Nashville Only:  Product ID # _____   Vendor ID # _____ )
NOTE:  ***EFSNET Technical Contact: Name _____   E-Mail _____   Phone _____
***Requires separate agreement between VSAT Provider prior to implementation of this telecommunications protocol.

**LEASE COMPANY: (04) First Data Global Leasing**    Lease Term: __48__ Months    Annual Tax Handling Fee: $ ___10.20___
Total monthly lease charge: $ ___119.76___ w/o taxes, late fees, or other charges that may apply -
See Lease Agreement for details. This is a NON-CANCELABLE lease for the full term indicated.
RSAWT1104

### (7) PROVIDE YOUR OWNER INFORMATION
RSAWT1104

| Owner / Partner / Officer Name: JOHNSON CHEN | D.O.B.: 03/23/1967 | Social Security #: 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 | Home Phone: (917) 882-9875 | % of Ownership: 0 |
|---|---|---|---|---|
| Home Address: 5 PEARL STREET | | City: INWOOD | State: NY | Zip: 11096 |
| Owner / Partner / Officer Name: | D.O.B.: | Social Security #: | Home Phone: | % of Ownership: 0 |
| Home Address: | | City: | State: | Zip: |

Client's Initials ___JC___

# MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 2 of 4)

**RSAWT1104** **(8) FLAT RATE / IC PLUS / TIER PRICING SCHEDULE** RSAWTCorpFee1104

DBA Name: MOCA ASIAN BISTRO     Pricing Type: ___002___     Interchange Schedule Version: RSA.MVD.S08.1.3T 3Tier     Loc. _1_ of _1_

## Start-Up Fees (One-Time Charge)

**Non-Taxable Fees:**

| | | | |
|---|---|---|---|
| Application Fee (Non-Refundable) | (247) | $ | 0.00 |
| Reprogramming Fee | (31A) | $ | 0.00 |
| Debit Set-up Fee | (31B) | $ | |
| Misc. Fee | (31J) | $ | |
| *Equipment Purchase (ACH) | | $ | 100.00 |
| Other: ( ) | | $ | |
| **Total Amount** | $ | 100.00 | wlo tax |

## Billed Monthly Fees (If Applicable)

| | | | |
|---|---|---|---|
| Service Fee | (335) | $ | 0.00 |
| ACH Reject Fee | (401) | $ | 25.00 |
| Minimum Processing Fee | (954) | $ | 0.00 |
| Wireless Access Fee | (399) | | |

FEE PER TID   # OF TIDs    TOTAL
$ _____ x _____ = $ _____

| | | | |
|---|---|---|---|
| ClientLine® | (32R) | $ | 0.00 |
| Paper Statement Fee | (323) | $ | 5.00 |

Premium Equipment Service Program
☐ Yes ☒ No (per location) (32U)
Other: _____
Supplies: _____

## Billed Annual Fees (October)

Compliance Service Fee (32Q) $ 94.75

## PIN Debit

(Must complete only one of the following fees if PIN Debit is selected)
Bundled PIN Debit $ _____
(191, Key 0-593)
OR
Unbundled PIN Debit $ _____
(018, Key 0-590, Key 0-593)
(plus the applicable network fees)

## Internet

**Start-Up Fees**
YourPay Set-up Fee (31X)
FEE PER TID   # OF TIDs    TOTAL
$ _____ x _____ = $ _____

Internet Set-up Fee (30R)
FEE PER TID   # OF TIDs    TOTAL
$ _____ x _____ = $ _____

**Billed Monthly Fees**
YourPay (31Z)
FEE PER TID   # OF TIDs    TOTAL
$ _____ x _____ = $ _____

Internet Service Fee (394)
FEE PER TID   # OF TIDs    TOTAL
$ _____ x _____ = $ _____

**Trans/Other Fees**
Internet/YourPay
MC, V, Amex, Dis, JCB
(03R, 04R, 06I, 07I, 08D, 435) $ _____

## Entitlements

| | | AUTHORIZATION | CAPTURE |
|---|---|---|---|
| American Express (Non-Full Service) | (068) | $ | 0.25 |
| JCB (10M) | | $ | |
| JCB License | (754) | | % |

*You will be charged the applicable State/City/Local Sales Tax

## Discount Fees (Based on Gross Transaction Volume)

**Accept all MasterCard, Visa and Discover Network and American Express® Transactions**
(presumed, unless any selections below are checked)

**MasterCard Acceptance**
☐ Accept MC Credit transactions only
☐ Accept MC Non-PIN Debit transactions only

**Discover Network Acceptance**
☐ Accept Discover Network Credit transactions only
☐ Accept Discover Network Non-PIN Debit trans. only

**Visa Acceptance**
☐ Accept Visa Credit transactions only
☐ Accept Visa Non-PIN Debit trans. only

**American Express Acceptance**
☐ Accept American Express Credit transactions only

See Section 1.9 of the Program Guide for details regarding limited acceptance. You are responsible for distinguishing Credit from Non-PIN Debit Cards. Even if you have agreed to limit your acceptance of certain cards as outlined above, you must continue to accept all types of card, whether Credit or Non-PIN Debit. If you agree to limit your acceptance to a particular type of card and, whether intentionally or in error, accept another type of transaction, the resulting transaction will downgrade to the highest cost interchange plus the applicable Non-Qualified Surcharge (See Section 18.1 of the Program Guide).

**MC / Visa / Discover Network IC Pass Thru**
You will be charged the applicable interchange rate from MasterCard (563), Visa (553), or Discover Network (529) plus a MasterCard Assessment Fee (273) of .0950%, a Visa Assessment Fee (274) of .0925%, or a Discover Network Assessment Fee (6AC) of .0925% plus any other fees indicated on this Service Fee Schedule.

**Pricing Method: (Select One)**

### QUALIFIED DISCOUNT RATES

| | | MC / Visa Discover Network 2-Tier | MC / Visa Discover Network 3-Tier | Transaction Fees (Applies to MC/Visa/Discover Network 2-Tier and MC/Visa/Discover Network 3-Tier ONLY) | MC/Visa/Discover Network/ American Express Discount Rate |
|---|---|---|---|---|---|
| MC Credit Discount Rate | (800) | ___% | 1.68 % | MC/VI Qual Credit Trans Fee (001, 002, 005, 008) $0.20 | ___% |
| Visa Credit Discount Rate | (804) | ___% | 1.68 % | | ___% |
| Discover Network Credit Discount Rate | (170) | ___% | 1.68 % | Discover Qual Credit Trans Fee (015,016) $0.20 | ___% |
| American Express** Credit Discount Rate | (Key 0-570) | | | | ___% |
| MC Non-PIN Debit Discount Rate | (850) | ___% | 1.45 % | MC/VI Qual Non-PIN Debit Trans Fee (130, 131, 134, 135) $0.20 | ___% |
| Visa Non-PIN Debit Discount Rate | (854) | ___% | 1.45 % | | ___% |
| Discover Network Non-PIN Debit Discount Rate | (964) | ___% | 1.45 % | Discover Qual Non-PIN Debit Trans Fee (787, 788) $0.20 | ___% |

### MID-QUALIFIED DISCOUNT RATES (Does not apply to MC/Visa/Discover 2 Tier)

| | | | | | |
|---|---|---|---|---|---|
| MC Credit Discount Rate | (810) | | 2.10 % | MC/VI Mid-Qual Credit Trans Fee (611, 612, 615, 616) $0.20 | |
| Visa Credit Discount Rate | (814) | | 2.10 % | | |
| Discover Network Credit Discount Rate | (990) | | 2.10 % | Discover Mid-Qual Credit Trans Fee (717, 718) $0.20 | |
| MC Non-PIN Debit Discount Rate | (870) | | 2.10 % | MC/VI Mid-Qual Non-PIN Debit Trans Fee (140, 141, 144, 145) $0.20 | |
| Visa Non-PIN Debit Discount Rate | (874) | | 2.10 % | | |
| Discover Network Non-PIN Debit Discount Rate | (968) | | 2.10 % | Discover Mid-Qual Non-PIN Debit Trans Fee (791, 792) $0.20 | |

### NON-QUALIFIED DISCOUNT RATES

| | | | | | |
|---|---|---|---|---|---|
| MC Credit Discount Rate | (820) | ___% | 2.95 % | MC/VI Non-Qual Credit Trans Fee (621, 622, 625, 626) $0.20 | |
| Visa Credit Discount Rate | (824) | ___% | 2.95 % | | |
| Discover Network Credit Discount Rate | (994) | ___% | 2.95 % | Discover Non-Qual Credit Trans Fee (721, 722) $0.20 | |
| MC Non-PIN Debit Discount Rate | (880) | ___% | 2.95 % | MC/VI Non-Qual Non-PIN Debit Trans Fee (150, 151, 154, 155) $0.20 | |
| Visa Non-PIN Debit Discount Rate | (864) | ___% | 2.95 % | | |
| Discover Network Non-PIN Debit Discount Rate | (978) | ___% | 2.95 % | Discover Non-Qual Non-PIN Debit Trans Fee (795, 796) $0.20 | |
| MC/Visa Authorization & Return Transaction Fees (10A, 10D) (002, 006) (131, 135) | | | | | $ _____   $ _____ |
| Discover Network Auth & Return Transaction Fee (10J, 016, 788) | | | | | $ _____   $ _____ |
| American Express Auth & Return Transaction Fee (10P) | | | | | $ _____ |
| Non-Qualified Surcharge Fee (30D) (excluding interchange pass-through fees, see Section 18.1) Applies to Non-Qualified MC, Visa, Discover Network and/or American Express Credit and/or Non-PIN Debit Transactions. | | | | | _____% |

**Retail merchants will be charged an additional 0.30% for non-swiped American Express transactions.

Client's Initials _____ JC

## MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 3 of 4)

DBA Name: MOCA ASIAN BISTRO                                        Loc. __1__ of __1__

### (8) FLAT RATE / IC PLUS / TIER PRICING SCHEDULE (Cont'd)

| Bypass Fees | | | |
|---|---|---|---|
| Datawire Mirconode | ☐ Yes ☐ No | | |
| Datawire Mirconode 960-AS Monthly Fee | (354) $_____ (each) | | |

**Authorization Fees**

| | | |
|---|---|---|
| Voyager | (0D0, 0D1, 0DV) | $_____ |
| WEX | (0B0, 0B1, 0BV) | $_____ |

**Other Payment Fees**

Voyager

| | | |
|---|---|---|
| Sales Discount Rate | (844) | _____% |
| Credit Discount Rate | (845) | _____% |

| Other Fees | | |
|---|---|---|
| Chargeback Fee | (205, 725, 20L) $ | 25.00 |
| MC Cross Border Fee USD | (605) | 0.50 % |
| Visa International Service Fee | (22A) | 0.50 % |
| MC / Visa / Discover Network / American Express® Voice | (10B, 10E, 10K, 10Q) $ | 0.75 |
| EBT | (18E, 18I, 02X, 18H) $ | |
| AVS | (405, 406, 407, 408) $ | 0.10 |
| Discover Network AVS | (07A, 07B, 07C, 079) $ | 0.10 |
| Batch Settlement Fee | (227) $ | 0.35 |
| MC / Visa / Discover Network Access Fee | (505, 504, 526) $ | 0.0075 |
| Other: | $ | |

Note: See Part IV "Additional Important Information Page for Card Processing" in Section A.3 for early termination fees.

**TeleCheck Services, Inc.**
P.O. Box 4514
Houston, TX 77210-4514
1-800-366-1064

### (9) TELECHECK RATES, SERVICE FEES, AND SET UP INFORMATION

Set-Up Fees:
No. of Physical Locations: ____1____   1st Location: @ __150.00__   Add'l Location(s): @ __100.00__ ea.   Total Set-Up Fee: $ __150.00__

TeleCheck Monthly POS Support Fee: $ _____ (per Terminal/Per Month. TeleCheck Equip. Only)   Total TeleCheck Monthly POS Support Fee: $ _____

| Check *ALL* TeleCheck Services that apply: | ☐ ECA Warranty *or* ☐ Paper Warranty | ☐ ECA Verification w / TRS Collections (20V) | ☐ ECA Verification *or* ☐ Paper Verification | ☐ LockBox Warranty | ☐ LockBox Verification |
|---|---|---|---|---|---|
| Average Check Size | $_____ | $_____ | $_____ | $_____ | $_____ |
| Total Monthly Check / Call Volume | $_____ | $_____ | $_____ | $_____ | $_____ |
| Inquiry Rate | _____% | | | _____% | |
| Transaction Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Advantage Billing | $_____ | $_____ | $_____ | $_____ | $_____ |
| One Rate | $_____ | $_____ | | | |
| Monthly Minimum Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Customer Request Operator Call / Voice Authorization Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Monthly Processing / Statement Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| December Risk Surcharge | _____% | | | _____% | |
| TRS Collections | | See TRS Service and Recovery Rate Section | See TRS Service and Recovery Rate Section | | |
| Warranty Maximum | ☐ Face Amt. of Authorized Item *or* $ ____ | | | ☐ Face Amt. of Authorized Item *or* $ ____ | |
| MICR Floor Limit | | | | | |
| Other: _____ | $_____ | $_____ | $_____ | $_____ | $_____ |

| Check *ALL* TeleCheck Services that apply: | ☐ COD Warranty | ☐ Mail Order Warranty | ☐ Check Cashing Warranty | ☐ Check Cashing Verification | ☐ Other |
|---|---|---|---|---|---|
| Average Check Size | $_____ | $_____ | $_____ | $_____ | $_____ |
| Total Monthly Check / Call Volume | $_____ | $_____ | $_____ | $_____ | $_____ |
| Inquiry Rate | _____% | _____% | _____% | _____% | _____% |
| Transaction Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Advantage Billing | $_____ | $_____ | $_____ | $_____ | $_____ |
| One Rate | | | | | |
| Monthly Minimum Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Customer Request Operator Call / Voice Authorization Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| Monthly Processing / Statement Fee | $_____ | $_____ | $_____ | $_____ | $_____ |
| December Risk Surcharge | _____% | _____% | _____% | | _____% |
| TRS Collections | | | | | See TRS Service and Recovery Rate Section |
| Warranty Maximum | ☐ Face Amt. of Authorized Item *or* $ ____ | ☐ Face Amt. of Authorized Item *or* $ ____ | See Section 2.1(a) of Check Cashing Warranty Addendum | | ☐ Face Amt. of Authorized Item *or* $ ____ |
| MICR Floor Limit | | | | | |
| Other: _____ | $_____ | $_____ | $_____ | | $_____ |

See TeleCheck / TRS Agreement for definitions and any additional fees.
Note: See Section 1.38 "Damages" of the TeleCheck / TRS Agreement for early termination fees / liquidated damages.

Client's Initials ____ JC

## MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 4 of 4)

3A Name: MOCA ASIAN BISTRO         Loc. __1__ of __1__

### (9) TELECHECK RATES, SERVICE FEES, AND SET UP INFORMATION (Cont'd)

#### TELECHECK BILLING INFORMATION

| | | |
|---|---|---|
| Your Head Office / Bill To Name: KANG YUE USA CORP | First/Last Contact Name: JOHNSON CHEN | Phone Number: (718) 268-3333 |

| Address: 107-18 70 ROAD | Suite # | City: FOREST HILLS | State: NY | Zip: 11375 | Your Fax Phone: (718) 268-3332 |
|---|---|---|---|---|---|

☒ TeleCheck Auto Settle Time: _____ hh ET (Must be at least 1 hour after Card Auto Settle Time)

#### TELECHECK REPORT INFORMATION

Funding Report: ☐ Bill To ☒ Location   Delivery Method: ☐ E-Mail ☐ Fax ☐ US Mail   Frequency: ☐ $ _____ Monthly ☐ $ _____ Weekly ☐ $ _____ Daily

Contact Name: _____     Contact Telephone #: _____

Report Fax #: _____     Report E-Mail Address: _____

Batch Closing Options: _____ ☐ AM ☒ PM   Must close by 11:30 PM CST    Format: ☐ CSV (E-Mail only) ☐ PDF

#### TELECHECK BANKING INFORMATION

Funding: ☐ Per Bill To ☒ Per Location        Fund By: ☐ Product ☐ Terminal ☐ Location ☐ Agent ☐ Batch ☐ Day

| ACH Credits to TeleCheck by Subscriber (For Invoice Payment): | ABA Transit #: _____ ☒ Same as above or | Account #: _____ ☒ Ck |
|---|---|---|
| Debits / Credits (Settlement) to Subscriber by TeleCheck and/or Franking Information: | ABA Transit #: _____ ☒ Same as above or | Account #: _____ ☒ Ck |

Special Instructions which are part of this Agreement: _____

**Please** note an separate funding check or bank letterhead the designated TeleCheck Service. A separate funding check or bank letterhead/logo for TeleCheck Services is **NOT** required UNLESS Merchant will be using different banking account(s) for TeleCheck Services.

### (10) TRS SERVICES AND RECOVERY RATE

TRS

| ☐ ECA Verification with TRS % of Item Amt. Recovered Retained by TRS: 10% Amt. of Return Item Fee Retained by TRS: 100% | ☐ TRS for Warranty (Non-Compliance Items) % of Item Amt. Recovered Retained by TRS: 20% Amt. of Return Item Fee Retained by TRS: 100% | ☐ TRS Other (including Paper Verification) % of Item Amt. Recovered Retained by TRS: 20% Amt. of Return Item Fee Retained by TRS: 100% |
|---|---|---|

NOTE: Stop payment checks due to disputes over goods or services must be returned to Subscriber for resolution.    Bank Auth: ☐ Yes ☒ No    Remittance Frequency: Monthly

### (11) AGREEMENT APPROVAL

The statements made in this Merchant Processing Application and Agreement are true. Client acknowledges having received and read a copy of the Interchange Schedule (for card processing services), Program Guide (which includes terms and conditions for each of the services, Operating Procedures, Third Party Agreements and a Confirmation Page), and Merchant Processing Application (consisting of Sections 1–13), as modified from time to time in accordance with the provisions of this Agreement and agrees to be bound by all provisions as printed therein. Client hereby consents to receiving commercial electronic mail messages from us from time to time. Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or Internet order. However, if your Application is approved based upon contrary information stated in the Provide More Business Data section above, you are authorized to accept transactions in accordance with the percentages indicated in that Section. This signature page also serves as the signature page to the Equipment Lease Agreement and the American Express® Card Acceptance Agreement appearing in the Third Party Section of the Program Guide, if selected, the undersigned Client being the "Lessee" for purposes of such Equipment Lease Agreement and/or "You" and "Your" for the purposes of the American Express Card Acceptance Agreement.

By signing below, each of the undersigned authorizes us to request and obtain from a consumer reporting agency, personal and business consumer reports. If the Application is approved, each of the undersigned also authorizes us to obtain subsequent consumer reports in connection with the maintenance, updating, renewal or extension of the Agreement. Each of the undersigned furthermore agrees that all references, including banks and consumer reporting agencies, may release any and all personal and business credit financial information to us: It is our policy to obtain certain information in order to verify your identity while processing your account application:

THIS MERCHANT PROCESSING APPLICATION AND AGREEMENT HAS BEEN EXECUTED ON BEHALF OF AND BY THE AUTHORIZED MANAGEMENT OF CLIENT AS OF THE EFFECTIVE DATE.

Client's Business Principal: *(Please sign below)*

X Signature _John Chen (signature)_

Print Name _____ JOHNSON CHEN _____ Date: _08/25/2008_

Title: ☒ Pres. ☐ V.P. ☐ Member L.L.C. ☐ Owner ☐ Partner

☐ Other _____

(PROCESSOR):

For First Data Merchant Services Corporation and Wells Fargo Bank N.A.

X Signature _____ Date: _____

Approved TeleCheck Manager

_____ Date: _____

Approved TRS Manager

IF TELECHECK SERVICES HAVE BEEN SELECTED, PLEASE SIGN BELOW:

X Signature _____

### (12) TELECHECK ACH AUTHORIZATION

ACH Debit and Credit Authorization: Client authorizes its Financial Institution to pay and charge to its account by electronic fund transfer the amount due TeleCheck and/or TRS under this Agreement and to accept all credits and debits made to its account by electronic fund transfer as a result of TeleCheck's and/or TRS' services. This authorization shall remain in effect until thirty days after revoked in writing.

X Signature _____ Print Name / Title: _____ Date: _____

Authorized Signature on TeleCheck Account for ACH

| RSAWT1104 | (13) PERSONAL GUARANTY | RSAWTCorpFee1104 |
|---|---|---|

In exchange for First Data Merchant Services Corporation, Wells Fargo Bank N.A. and American Express' acceptance of, as applicable, the Agreement and/or the Equipment Lease Agreement and/or American Express Card Acceptance Agreement, the undersigned unconditionally guarantees performance of the Client's obligations under the foregoing Agreements, and payment of all sums due thereunder, and in the event of default, hereby waives notice of default and agrees to indemnify the other parties for any and all amounts due from Client under any of the foregoing Agreements. I understand that this is a Guaranty of payment and not of collection and that Wells Fargo Bank N.A., First Data Merchant Services Corporation and American Express, are relying upon this Guaranty in entering into, as applicable, the Agreement, the Equipment Lease Agreement and the American Express Card Acceptance Agreement.

Signature *(Please sign below):*      Signature *(Please sign below):*

X _____, an individual   X _____, an individual

## ABOUT MERCHANT'S BUSINESS

Bank Code: 959 _____ Merchant ID: _____ BuyPass Merchant #: _____

☐ TR   ☐ TU

DBA
NAME MOCA ASIAN BISTRO _____ *(24 characters)*

Area #: ___38___   Group #: ___01___   Service By Region: ___4000___   District Code: _____   ISR Rep ID: _____   SIC # ___5812___

Check Assoc. Code: _____   Current Check Vendor: _____

## CARD BANKING INFORMATION

First / Last
Contact Name: PEGGY CHAN   Phone Number: (718) 512-0910

ABA (Routing #)   DDA (Account #)
026002927   50855600

## CHECKLIST INFORMATION

Regional Office Received Date: _____   MCC: 5812   Merchant Type: 1000   RELM: RSA

Pricing Grid # RSA00053   ☐ Special Pricing Model   ☐ Association Grid   ☒ Linkback # 959000001   NRPT: 0.01%   NCPT: 0.01%

Sales Support ID: ___JMAD___   Office Admin.: _____   Card Rep. # ___CUT3___   TeleCheck Rep. # _____

Print Sales Rep. Name: Jenny Ashley   Initial: ___JA___   Sales Lead Tracking #: ___1004327216___

HIERARCHY: Bank: 959980002882   Agent: 959970002884

Corp.: _____   Chain: _____   BuyPass FIID: _____

## CLIENT VISITATION

☐ Visit Not Required (Lic. Professional)

1. Zone: ☒ Business District  ☐ Industrial  ☐ Residential

2. Location: ☐ Mall  ☒ Shopping Area  ☐ Isolated  ☐ Office  ☐ Apartment  ☐ Home  ☐ Other: _____

3. Seasonal: ☒ No  ☐ Yes, Months in Operation: _____
Months Open Between _____ to _____

4. External Facility Description (# of Levels/Floors):
☒ 1  ☐ 2-4  ☐ 5-10  ☐ 11 plus

5. Merchant Occupies: ☐ Ground Floor  ☒ Other: _____

6. Remaining Floor(s) Occupied by:
☐ Residential  ☐ Commercial  ☐ Combination

7. Advertising Name Displayed:
☐ Window  ☐ Door  ☒ Store Front

8. Approximate Square Footage:
☐ 0-250  ☐ 251-500  ☒ 501-2,000  ☐ 2,001 plus

9. # of Registers: _____1_____

10. Return Policy: ☐ Full Refund  ☐ Exchange Only  ☒ None

11. Do you have a refund policy for your MC / Visa / Discover®
Network / American Express® sales?  ☐ Yes  ☒ No
If yes, Check one: ☐ Exchange ☐ Store Credit ☐ Refund Cardholder
If MC / Visa / Discover Network / American Express Credit,
within how many days do you submit credit transactions?
☐ 0-3  ☐ 4-7  ☐ 8-14  ☐ Over 14 days

12. Merchant's E-Mail Address: *(required for IP or TeleCheck TRS)*

13. Proper License Visible (Liquor, Tax ID, etc.): ☒ Yes
☐ No, explain: _____

14. Your Previous Processor: _____

15. Your Previous Merchant Number: _____

16. Check Reason for Changing:
☐ Rate  ☐ Service  ☐ Terminated  ☐ Other: _____

17. Do You Have Previous Processor MC/Visa/Discover
Network/American Express Statements?
☐ Yes  ☒ No

18. Are customers required to leave a deposit?
☐ Yes  ☒ No   If Yes, % of deposit required: _____ %
Time Frame for Delivery: _____ Days

Comments to Credit Officer / Other Depository / Primary Savings Account Number and Additional Information *(40 Characters):*

## MAIL CARD STATEMENTS / DOCUMENTS

Statement Recap Information: *(circle one)*  ☒ 01 = Outlet  ☐ 02 = Stmt to Bill To/No Recap  ☐ 07 = Suppress Stmt (No Stmt)  ☐ 08 = Produce Recap, No Stmt
☐ 09 = Bill to Address / Stmt and Recap  ☐ 10 = Recap to Bill To/Stmt to Outlet

Statement Type: *(check one)*  ☐ Detail  ☒ Summary   Statement Delivery Method: *(check one)*  ☐ E-mail  ☐ Online  ☒ Print and Mail

Statement E-mail Address:

Head Office/
Bill To Name: KANG YUE USA CORP   First/Last Contact Name: JOHNSON CHEN

Address:   City:   State:   Zip:   Phone #:
107-18 70 ROAD   FOREST HILLS   NY   11375   (718) 268-3333

ON YOUR BUSINESS ACCOUNT
CHECKING STATEMENT ROLLUP: *(circle one)*  ☐ 0 = Each Transfer  ☒ 1 = Debit/Credit Grouped (By Category)  ☐ 2 = Net Transfer Amount Only  ☐ 3 = Net Transfer EOM Fee Combined

## CARD PROCESSING INFORMATION   RSAWT1104

1. Processing mode: ☒ EDC  ☐ Paper Voice  ☐ Tape  ☐ ECR  ☐ Paper Terminal   2. Funding will be processed DAILY via: ☒ ACH  ☐ Bankwire

3. Bank will fund: ☒ Outlet  ☐ Head Office   4. # of Plates: ☐ Long  ☐ Short   5. Fire Safety Act: ☒ Yes  ☐ No

6. Ship Equipment and Welcome Packet to *(check one)*: ☐ Outlet  ☐ Head Office  ☐ Other, give mailing information below  ☐ No Welcome Packet and Supplies  ☐ No Welcome Packet

Name:   First/Last Contact Name:

Address:   City:   State:   Zip:

7. Debit Bill Payment Transaction Type: ☐ Internet  ☐ VRU  ☐ Recurring  ☐ Call Center   Sponsoring Debit Network: ☒ NYCE  ☒ Pulse  ☒ Star

8. Additional Terminal Features: *(Check all that apply to ensure timely terminal programming)*

☒ Auto Settle Time ___01:30___ hh ET (military)
☐ Bar Tab
☐ Clerk / Server Entry
☐ Debit Cash Back
Delayed Ship Date: _____
☐ Dial Prefix ☐ Dial 9 ☐ Other: _____
☐ Dial Suffix: _____
☐ E-Commerce
☐ If IP _____
  *(List Current Provider)*

☐ QSR-CR/SMT
  *(Convenience/Small Ticket)*
☐ QSR Print Option _____
☐ Invoice Number
☐ Multi-Trans
  *(PC/Register/Software Only)*
☐ No Server/Ticket ID
☐ Remove Room # Prompt
☐ Remove Ticket # Prompt
☐ Retail Gas

☐ Retail With Tip
☐ Ship Method
  *(Overnight)*
☐ Tip % Option
☐ Verify Amount Prompt
☐ Partial Approval
☐ Purchase w/
  Balance Return
☐ Standalone
  Balance Inquiry

☐ Amex Prepaid Program
  Preference *(Choose One)*
☐ Partial Auth
☐ Balance Back
☐ Other _____

PINPad:
☐ DES Encryption
☐ DUKPT
☐ Access Code
  # _____

| Terminal Features: *(Cont'd)* | Key Disable | Password or Protect |
|---|---|---|
| Credits | ☐ | ☐ |
| Voids | ☐ | ☐ |
| Forces | ☐ | ☐ |
| Reviews | ☐ | ☐ |
| Bal/Settle | ☐ | ☐ |
| Auth Only | ☐ | ☐ |
| Reports | ☐ | ☐ |
| Tip Adjustment | ☐ | ☐ |

Comments: _____
( NOTE: Completing the Comments field will result in a 48 hour terminal programming delay)

## MERCHANT PROCESSING CREDIT ADDENDUM

Client's DBA Name: <u>MOCA ASIAN BISTRO</u>

### OTHER ENCLOSURES (Check)

1. Financial Statements (2 years most recent) required for:
   - ☐ Low to Moderate Risk     $3MM or greater
   - ☐ Mail/Telephone Order     $1MM or greater and exceeding percentage requirements
   - ☐ Business to Business     $1MM or greater
   - ☐ Internet     $1MM or greater

2. Method of Advertising:    ☐ Catalog    ☐ Brochure/Direct Mail    ☐ TV/Radio    ☐ Internet
   *(Attach at least one)*    ☐ Phone    ☐ Newspaper/Journal    ☐ Other *(specify)* _____

3. Brochures / Marketing Materials / Advertisement required for : ☐ Mail/Telephone Order (exceeds percentage requirement)
      ☐ Business to Business (exceeds percentage requirement)

4. Internet *(Required):*    ☐ Web Page Attached - OR -
      ☐ List Web Site Address: _____

5. Other: ☐ _____

### BUSINESS PREMISES

Are Your Business Premises: ☒ Owned    ☐ Rented    If rented, please complete the following:    Renting Since: _____    Lease Expires: _____

Landlord      First / Last
Name:      Contact Name: _____    Phone: _____

### SUPPLIER REFERENCES

☐ Low to Moderate Risk $3MM or greater    ☐ Business to Business    ☐ High Risk    ☐ Tier II

| 1. Business Name: | Product/Service Purchased: | | | |
|---|---|---|---|---|
| Contact/ Account #: | Phone: | City: | State: | Zip: |
| 2. Business Name: | Product/Service Purchased: | | | |
| Contact/ Account #: | Phone: | City: | State: | Zip: |
| 3. Business Name: | Product/Service Purchased: | | | |
| Contact/ Account #: | Phone: | City: | State: | Zip: |

### MAIL/TELEPHONE ORDER / BUSINESS TO BUSINESS / INTERNET INFORMATION    RSAWTSC1104
### (All Questions Must Be Answered)

1. What % of total sales represent business to business
   (vs. business to consumer)?    Business to Business ____0____ % + Business to Consumer ____100____ % = 100% (total sales)

2. What % of bankcard sales represent business to business
   (vs. business to consumer)?    Business to Business ____0____ % + Business to Consumer ____0____ % = 100% (bankcard sales)

3. Time frame from transaction to delivery:
   % of orders delivered in: 0-7 days ____0____ % + 8-14 days ____0____ % + 15-30 days ____0____ % + over 30 days ____0____ % = 100%

4. MC / Visa / Discover® Network / American Express® sales are deposited *(check one):*    ☐ Date of order    ☐ Date of delivery    ☐ Other *(specify):* _____

5. Who performs product/service fulfillment?    Direct ____X____ ? Vendor _____ ? If Vendor, add name, address, phone.    ☐ Other *(specify):*

Describe how the transaction works, from order taking to merchant fulfillment *(attach add'l sheet, if necessary):* _____

6. Does any of your cardholder billing involve automatic renewals or recurring transactions *(i.e., cardholder authorizes initial sale only)?* ☐ Yes ☒ No

Comments: _____